

# NUMBER 13-17-00446-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

HOMER HERNANDEZ,                                                    Appellant,

v.

DRISCOLL CHILDREN'S
HOSPITAL,                                                          Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

By one issue, appellant Homer Hernandez appeals the trial court's summary

judgment in favor of appellee, Driscoll Children's Hospital (the Hospital).  We affirm.

## I. BACKGROUND

The Hospital hired J.R. Electric, a contractor, to perform the work necessary to install an MRI scanner. Hernandez, an employee of J.R. Electric, was electrocuted and injured while working on an electrical breaker box at the Hospital. Hernandez sued the Hospital for negligence, gross negligence, and premises liability.

The Hospital filed a motion for traditional summary judgment claiming it was not liable for Hernandez's injury pursuant to § 95.003 of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. Hernandez filed a response and two supplemental responses.

The trial court denied the Hospital's motion for summary judgment, and the Hospital filed a motion for reconsideration. In its motion for reconsideration, the Hospital argued that Hernandez did not (1) respond to its Chapter 95 argument, (2) submit any evidence or argue that the Hospital retained any control of the work performed by a contractor, or (3) argue or submit any evidence that the Hospital had actual knowledge of the alleged dangerous condition. *See id*. Hernandez filed a response and supplemental response to the motion for reconsideration generally stating that his exhibits showed that "the evidence of [the Hospital's] control is overwhelming and conclusive." After holding a hearing, the trial court granted the Hospital's motion for reconsideration and motion for summary judgment. This appeal followed.[1]

---

[1] In his summary of the argument section of his brief, Hernandez states the following:

Appellant further contends that, as a preliminary and perhaps, a dispositive matter, Judge Ables Assignment-procured by violations of the Texas Rules of Civil Procedure and Tex. Gov't Code statutes governing assignments and objections thereto, all render Judge Ables disqualified, ab initio, and thus, render all action taken by Judge Ables, including his Order granting Defendant Driscoll Hospital's Motion for Summary Judgment void.

## II.  STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).  If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment.  *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).  A defendant seeking a traditional motion for summary judgment must either conclusively disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense.  *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam).  We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law.  *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not.  *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.

---

To the extent that Hernandez argues that the Honorable Stephan B. Ables was without authority to hear the case, we disagree.  The Honorable Missy Medary, the Presiding Judge of the Fifth Administrative Judicial Region, signed an order of assignment assigning the case to Judge Ables on March 12, 2017, and on April 10, 2017, she held a hearing wherein she advised all parties of the assignment of the case to Judge Ables.  Accordingly, the record reflects that Judge Medary provided actual notice to Hernandez of the assignment of the case to Judge Ables.  *See* TEX. GOV'T CODE ANN. § 74.053(c).  In addition, although Hernandez filed an objection to the assignment of the case to Judge Ables on May 8, 2017, it was untimely as it was filed more than seven days after Hernandez received notice of the assignment.  *See id*. (providing that a party has seven days to object to assignment of judge).

2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007).

### III. CHAPTER 95

"Chapter 95 enunciates a general rule of non-liability for property owners when a contractor or subcontractor or an employee of a contractor or subcontractor is injured while performing repairs or construction." *Rosa v. Mestena Operating, LLC*, 461 S.W.3d 181, 182–87 (Tex. App.—San Antonio 2014, pet. denied). Under Chapter 95, the property owner is not liable for a plaintiff's injuries if the claim is for personal injury that "arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement" unless the plaintiff establishes that the property owner (1) exercised or retained some control over the manner in which the work was performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and (2) had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn the plaintiff of that danger or condition. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. The property owner has the initial burden to establish that Chapter 95's general rule applies to the plaintiff's claim. *Montoya v. Nichirin–Flex U.S.A., Inc.*, 417 S.W.3d 507, 511 (Tex. App.—El Paso 2013, no pet.). The burden then shifts to the plaintiff to establish control and knowledge. *See id*.

Thus, as applicable here, the Hospital had the initial burden of conclusively establishing (1) it is a property owner, (2) Hernandez alleged that the Hospital is liable for Hernandez's personal injury, (3) Hernandez was an employee of a contractor, and (4)

4

Hernandez's claim arises from a condition or use of an improvement to the Hospital's property where J.L. Electric was constructing, repairing, renovating, or modifying the improvement. *See id*.; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. Once the Hospital met its burden, the burden then shifted to Hernandez to establish that the Hospital (1) exercised or retained some control over the manner in which the work was performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and (2) had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn the plaintiff of that danger or condition. *See Montoya*, 417 S.W.3d at 511; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003.

### III.    DISCUSSION

### A.    Same Improvement

By his first issue, Hernandez contends that the Hospital did not meet its initial burden of conclusively establishing that his claim arises from a condition or use of an improvement to the Hospital's property where J.L. Electric was constructing, repairing, renovating, or modifying such improvement.[2] *See Montoya*, 417 S.W.3d at 511. Citing *Hernandez v. Brinker International, Inc.*, Hernandez claims that the improvement he was hired to repair (the MRI machine) is not the complained-of condition (the breaker box) that caused his injury. *See* 285 S.W.3d 152, 155 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In *Brinker*, the appellant was hired to fix an air conditioning unit (the improvement),

---

[2] It is undisputed that the Hospital met its initial burden to conclusively establish that (1) it is a property owner, (2) Hernandez alleges that the Hospital is liable for personal injury, and (3) Hernandez was an employee of a contractor. Therefore, we need not address those elements. *See* TEX. R. APP. P. 47.1.

and while he carried a compressor, either walking to the unit or away from it, the roof where the unit was located (the condition that caused the injury) collapsed, causing the appellant's injury. *Id*. at 154. The property owner filed a motion for summary judgment claiming that Chapter 95 barred the appellant's recovery because the property owner exercised no control over his work. *Id*. The trial court granted the summary judgment motion. *Id*.

On appeal, the appellant in *Brinker* argued that Chapter 95 only applied if his claim arose from the condition or use of the improvement he was repairing (the air conditioning unit), but because his claim arose from the condition of a different improvement (the roof), Chapter 95 did not apply. *Id*. at 155. The property owner conceded the injury resulted from the use of the roof and not from the condition or use of the air conditioning system; however, the property owner argued that the entire building was the "improvement," and the air conditioning unit was a mere "fixture" to the building. *Id*. The Houston Court of Appeals agreed with the appellant and held that the roof and the air conditioning unit were separate improvements to real property. *Id*. The *Brinker* court concluded that Chapter 95 only applies to a claim that involves an injury caused by the *same* improvement for which the contractor was hired to repair. *Id*. at 158. The Texas Supreme Court has since agreed. *Ineos USA, L.L.C. v. Elmgren*, 505 S.W.3d 555, 567 (Tex. 2016) (holding that Chapter 95 "only applies when the injury results from a condition or use of the same improvement on which the contractor (or its employee) is working when the injury occurs).

Here, in its motion for summary judgment, the Hospital attached the affidavit of Joe Martinez, the Hospital's director of its engineering department, stating that the Hospital hired J.R. Electric to perform two tasks: (1) install an MRI scanner and (2) "repair and

6

modify *the electrical system* of the [H]ospital to allow for the installation . . . " of the MRI scanner (emphasis added). Martinez said, "This work included the installation of new wiring in a breaker box [permanently] attached to the [H]ospital." According to Martinez, the MRI machine could not have been installed without repairing and modifying the breaker box. Thus, unlike *Brinker*, where the improvement being repaired (the air conditioning unit) did not cause the injury, the Hospital's summary judgment evidence shows that one of the improvements it hired J.L. Electric to repair (the breaker box) caused Hernandez's injury. Accordingly, the summary judgment evidence conclusively established that Hernandez's injury resulted from a condition or use of the same improvement that J.L. Electric was hired to perform when he was injured. *See Ineos USA,* 505 S.W.3d at 567; *Brinker*, 285 S.W.3d at 155.

In his response, Hernandez did not present any evidence contradicting the Hospital's summary judgment evidence that it hired J.R. Electric in part to install new wiring in the breaker box, and we find none. *See Montoya*, 417 S.W.3d at 511; *Nichols v. Smith*, 489 S.W.2d 719, 723–24 (Tex.—Fort Worth 1973) *aff'd*, 507 S.W.2d 518 (Tex. 1974) (providing that once the defendant established its defense as a matter of law by summary judgment evidence, the defendant is entitled to summary judgment unless the plaintiff provides legitimate summary judgment evidence showing that a fact issue exists); *see also* TEX. R. CIV. P. 166a(c). Thus, considering all the evidence in the light most favorable to Hernandez, we conclude that the Hospital met its initial burden of establishing that Chapter 95 applies, and Hernandez did not raise a material fact issue sufficient to defeat summary judgment on that basis. *See Centeq Realty, Inc.*, 899 S.W.2d at 197.

**B.    Exceptions to Chapter 95**

7

Next, Hernandez argues that summary judgment was improper because he provided evidence which raises a material question of fact regarding whether the Hospital (1) exercised or retained some control over the manner in which the work was performed, other than the right to order the work to start or stop or to inspect progress or receive reports and (2) had actual knowledge of the danger or condition resulting in his personal injury and failed to adequately warn him of that danger or condition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003.

A plaintiff may prove control by either showing there is a contractual right of control or the property owner exercised actual control. *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999); *Chi Energy, Inc. v. Urias*, 156 S.W.3d 873, 879 (Tex. App.—El Paso 2005, pet. denied)). "The owner, to be liable, must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way." *Id*. The property owner must have the right to control the "operative detail of the contractor's work." *Id*. The property owner must have more than a general right to inspect the progress, receive reports, or tell the worker to start and stop. *Chi Energy, Inc.*, 156 S.W.3d at 879.

In his summary judgment pleadings, Hernandez did not provide argument concerning control. Instead, he generally cited his exhibits, which include approximately 100 pages of, among other things, deposition testimony, pictures, and manuals. In fact, at the motion for summary judgment hearing, Hernandez argued that Chapter 95 does not apply because this is a common law negligence case. He did not argue or provide

8

summary judgment evidence that the Hospital controlled the methods or details of his work to the extent that he was not entirely free to do the work his own way.[3]  Instead, Hernandez argued that the Hospital controlled the breaker box by changing the lock and leaving the breaker box on.  On appeal, Hernandez states that the Hospital exercised or retained control of "the lock-out/tag-out," "the training of all employees of contractors on lock-out/tag-out procedures," and the Hospital's locks, keys, and master keys.  However, he points to no evidence supporting these assertions.

Hernandez does not explain what the lockout/tagout procedures entail, or how the above-stated allegations relate to whether the Hospital retained some control over the "operative detail" of his work.  However, the summary judgment evidence established that lockout/tagout procedures are implemented by electricians and mechanics when working on a breaker box as a safety measure.  As Martinez explained at his deposition, per the safety standards, an electrician will shut off the breaker box, log that he is working on the breaker box on a tag on a padlock, and then lock the breaker box to ensure his safety.[4]

On appeal, Hernandez claims that the Hospital removed the padlock that his employer (J.L. Electric) placed on the breaker box, then replaced the lock "with [its] own lock and turned on the electric . . . thereby [e]nsuring a massive electric shock to Hernandez."  As we understand it, Hernandez complains that the Hospital controlled the breaker box and caused his injury when it violated its lockout/tagout safety measures

---

[3] We note that at the summary judgment hearing, Hernandez repeatedly stated that there was summary judgment evidence that the Hospital retained control over his work.  However, Hernandez did not cite any such evidence and continued to argue that Chapter 95 was inapplicable because this case involves negligence unrelated to Hernandez's work.

[4] Martinez explained that the electrician working on a breaker box puts his name, the date, and the time when he locks out the breaker box on a tag which is located on a padlock.  According to Martinez, while the padlock is in place, the breaker box cannot be turned on and remains shut off.

9

when it replaced J.L. Electric's lock with its own. However, whether the Hospital acted negligently does not pertain to whether the Hospital maintained control over Hernandez's work. Thus, even assuming, without deciding that the Hospital did what Hernandez alleges, that evidence does not support a conclusion that the Hospital retained control over the methods, or details of his work to the extent that he was not entirely free to do the work his own way as required by Chapter 95. *See Ellwood Tex. Forge Corp.*, 214 S.W.3d at 700.

Martinez stated in his affidavit that

[n]o one from [the Hospital] was assisting or directing the work performed by J.R. Electric. J.R. Electric maintained control of the electrical work associated with the installation of the MRI scanner. J.R. Electric, as an independent contractor, provided all of the labor, tools and equipment necessary to complete modification of the breaker box associated with the MRI replacement project. [The] Hospital did not have any control over the hiring or direction of Mr. Hernandez.

Hernandez has pointed to no evidence, and we find none, controverting Martinez's affidavit or supporting a conclusion that the Hospital had the right to control the method, manner, means, and operative details of his work. Thus, the undisputed evidence establishes that the Hospital did not maintain any control over Hernandez's work as a matter of law. Having examined the summary judgment record de novo, we conclude that the Hospital conclusively established, as a matter of law, that it neither exercised nor retained control over the manner in which Hernandez performed his work. *See* TEX. R. CIV. P. 166a; *Nixon,* 690 S.W.2d at 548. Thus, the trial court properly granted summary judgment in favor of the Hospital. Accordingly, we overrule Hernandez's sole issue.[5]

---

[5] We need not address Hernandez's argument that he provided evidence raising a question of material fact that the Hospital had actual knowledge of the danger or condition that caused his injury because, to show that Chapter 95's exception applies, Hernandez was also required to raise a material fact issue regarding whether the Hospital controlled the manner in which the work was performed, and we have

10

## IV.     CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Delivered and filed the
15th day of August, 2019.

---

concluded that he did not do so.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *see also* TEX. R. APP. P. 47.1.