### 9052

### SANDERS v. LANDRETH SEED CO.

#### (84 S. E. 880.)

SALES—WARRANTY—BILLS OF LADING WITH DRAFT ATTACHED—NONSUIT
—ISSUES

1. SALES—WARRANTY.—A sound price warrants a sound article, and
where the seller notifies a purchaser after he has paid the purchase
money, that he will not hold itself liable for defects in quality and
no goods would be taken back, the purchaser may recover for
breach of the implied warranty.

2. SALES—IMPLIED WARRANTY OF QUALITY—INVOICE AND BILL OF LAD-
ING.—Where the plaintiff ordered seeds at a sound price, which were
shipped to him under an invoice and bill of lading making various
statements negativing any warranty of quality, such statements could
not render the transaction a sale on inspection; since a sound price
warrants a sound article.

3. SALES—IMPLIED WARRANTY—BILL OF LADING AND INVOICE—STATE-
MENTS.—In an action by a buyer of potatoes for damages resulting
from failure of the crop, where, by the invoice and bill of lading,
the seller stated that it would allow no claim for damages after
delivery to the carrier in good condition, such seller could not escape
the consequences of its own statements when the buyer took it at its
word and planted the shipment without asking the seller to take
back the goods.

4. SALES—WARRANTY.—Where the evidence shows that a purchaser
neither inspected, nor had a right to inspect goods until after he
had purchased them for a sound price, he cannot be held to have
voluntarily accepted the risks arising from defects in the goods.

5. SALES—ACTION ON WARRANTY—SUFFICIENCY OF EVIDENCE.—In action
against a seller of seed potatoes for failure of the crop, evidence
*held* sufficient to sustain verdict for plaintiff on the implied war-
ranty of soundness raised by a sound price.

6. SALES—SHIPMENT—RESERVATION OF TITLE.—Where seeds were sold and shipped to the buyer, the bill of lading, with draft attached, being paid by the buyer, the seller retained title and possession in itself until the goods arrived at the point of delivery and the draft was paid and the bill of lading turned over to the plaintiff by the bank.

7. SALES—IMPLIED WARRANTY OF QUALITY—INVOICE AND BILL OF LADING.—The implied warranty of the soundness of goods sold raised by a sound price cannot be abrogated by the mere insertion by the seller in the invoice and bill of lading of statements negativing any warranty or any responsibility for the quality of the goods in general.

8. ISSUES.—Whether under the evidence there had been a modification of the terms of the original contract between the parties was properly submitted to the jury.

Before BOWMAN, J., Beaufort, November, 1913. Affirmed.

Action by Gustave Sanders against D. Landreth Seed Company. From judgment for plaintiff, defendant appeals.

*Mr. Simeon Hyde,* for appellant, submits: *Invoice was a part of contract:* 34 S. C. 301; 92 S. C. 95. *Implied warranty:* 35 Cyc. 409; 6 N. Y. St. 4; 117 Ky. 382; 78 S. W. 143; 25 Ky. L. Rep. 1472; 63 L. R. A. 647; 80 S. C. 292. *Purchaser must protect himself by investigation:* 8 Ency. 643; 46 S. C. 288; 2 Strob. Eq. 154; 53 S. C. 35; 19 S. E. 187; 21 Fed. 435; 41 Am. R. 215; Pom. E. Juris., secs. 892-3; 1 Rich. 106; 13 Wall. 379; 125 U. S. 247; 135 U. S. 609; 142 U. S. 43; 158 U. S. 505; 16 Am. St. Rep. 137; 56 Am. St. Rep. 196; 81 Am. Dec. 662; 5 Am. Dec. 642; 37 Am. Dec. 404; 109 Fed. 31; 2 N. & McC. 54. *Title passed*

FOOTNOTE.—As to retaining control of bill of lading to insure payment as affecting sufficiency of delivery to carrier as compliance with provision requiring delivery at place of shipment, see note in 54 L. R. A. (N. S.) 1915b. As to right of rescission on breach of warranty on vendor of seeds, see note in 37 L. R. A. (N. S.) 85. As to effect on passing of title to goods of attaching draft to bill of lading to seller's order, see note in 5 A. & E. Ann. Cas. 263.

*to purchaser at point of shipment:* 1 Benj. Sales, p. 466; Moore, Carriers, p. 159. *Implied warranty extends only to kind or species:* 58 Md. 59; 35 Cyc. 409.

*Mr. W. J. Thomas,* for respondent, submits: *Original contract complete, and not changed by invoice, etc.:* 77 S. C. 219. *No duty to inspect on delivery:* 70 S. C. 496. *Implied warranty:* 15 S. C. 95.

*Mr. L. K. Legge,* in reply for appellant, submits: *Implied warranty is only against defects existing at time of delivery:* 1 Bay. 324 and 480. *Variance between allegations and testimony is without objection:* Code Civil Proc., secs. 224 and 227; 96 S. C. 18; Pom. Code Rem., 4th ed., sec. 636; 54 S. C. 98. *Title passed on delivery to carrier:* Benj. Sales 93; 71 Ala. 368; 73 Me. 278; 91 Me. 31; 43 Ark. 353; 21 Ill. App. 213; 130 Pa. St. 138; 104 N. C. 25; 38 W. Va. 53; 42 S. W. 1107; 73 N. Y. 252; 13 R. I. 347; 72 S. C. 450; 81 S. C. 226; 90 S. C. 323; 93 S. C. 30; 70 S. C. 494; 24 Am. and Eng. Enc. of L. 1072; 179 Fed. 151; 76 N. W. 1082; 2 L. R. A. 514; 172 Fed. 113. *Where buyer has the opportunity to inspect, and defects are not latent, rule of "sound price, sound goods" does not apply:* 2 Bay. 380; 18 S. C. 93; 2 Bay. 498; 1 Bailey 179; 2 N. & McC. 540; 1 N. & McC. 148; 3 Strob. 64; 1 Rich. 404; 58 S. C. 56; 80 S. C. 292; 85 S. C. 486; 1 Rich. L. 48; 38 Brev. 230. *By acceptance plaintiff waived the right to allege inferiority which was obvious to him:* 78 S. C. 200; 2 Bay. 498. *Plaintiff's rights and duties:* Benj. Sales, pars. 1343, 1339, 634; 2 Mills, 76; 1 Bailey 648; 10 S. C. 164. *Reasonable time to examine goods, and accept or reject:* 15 S. C. 123; 37 S. C. 7; 36 S. C. 65; 85 S. C. 486. *Measure of damages on discovering defective condition of goods:* 78 S. C. 424; 74 S. C. 202; 75 S. C. 342; 88 S. C. 572.

April 3, 1915.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The respondent gave to the appellant the following order:

"G. Sanders, treasurer Beaufort county. Order with D. Landreth Seed Co., Bristol, Pa. Beaufort, S. C., January 15, 1910. 200 sax cobblers, at $2.90; 20 sax Spaulding Rose, at $3.45; 20 bus. peas, Ameer, at $4.50; 50 no cuc extraordinary Spunc, 65 cents; 20 bu. beans, Red Valentine, $3.25; 1 No. Nelson, Kleckley Sweet N. C. Shipment December 20, 1909. Subject to revision or cancellation till November 1, 1909. (Signed) V. V. Vansant. July 22, 1909."

The order was written on the official stationery of Mr. Sanders, but it was for his private use. The goods were shipped to appellant's agents in Savannah, Ga., in carload lots and the potatoes intended for Mr. Sanders were there separated and reshipped to appellant at Beaufort, S. C.

The bill of lading, with draft attached, was sent to a bank in Beaufort, to order notify Gustave Sanders. Mr. Sanders paid the draft and took the bill of lading to the transportation company and took possession of the potatoes and sent them to his farm. Comparatively few came up and this action is brought to recover damages for the defective seed potatoes.

There is testimony tending to show that the potatoes were in bad condition when Mr. Sanders took charge of them, and that he knew it. The defendant in its answer admitted that the price was sound, but alleged that it had delivered a sound article. That the plaintiff had every opportunity to inspect the potatoes, and, after inspection, accepted them. That the sale was without any warranty and that the defendant is not liable for the failure of the potatoes to germinate.

The invoice, and it is said the bill of lading, contains the following:

"Invoice offered in evidence marked Exhibit 'B.'

### Exhibit 'B' HDE.

The D. Landreth Seed Co. give no warrant, express or implied, as to description, quality, productiveness, or any other matter of any seeds they send out, and they will not be in any way responsible for the crop.

Burnet Landreth, President; Burnet Landreth, Jr., Treas.; S. Phillips Landreth, Sec'y.

Bloomdale Seed Farms, Bristol, Pa., Jan. 5, 1910.

Mr. Gustav Sanders,
Beaufort, S. C.

If the purchaser does not accept the goods on these terms, they are at once to be returned.

Bought of D. Landredth Seed Co. Founded 1784, Incorporated 1904.

In preparing onion sets and potatoes for shipment every possible care is taken to insure safe carriage and delivery, but the precarious nature of such articles make it necessary that we should call the attention of our

—packages.    —220 bags.
Boxes 36,300.
——crates——bbls.
Garden Seed Farmers and Merchants.

customers to the fact that after delivery in good order to transportation company (which thereupon becomes the agent of consignee), our responsibility ceases, and the risk of safe carriage, delays or carriers, and damage from any cause whatever must be assumed by the purchaser. No claim for damage will be allowed by us. Onion sets should be taken out of the barrels or crates as soon as received and spread out on a dry floor.

We do not guarantee safe carriage or delivery of goods. After shipment in good order, our responsibility ceases. Your recourse is upon the carrier.

*Shipped at Risk of Purchaser.*

No goods taken back. All claims must be made within five days.

*All Orders Are Received Subject to Results of Crops.*

Net cash, due on date of shipment, subject to draft at sight.

Potatoes:

| | | |
|---|---|---|
| 130 sacks Irish Cobblers @ $2.90...$377 00 | | |
| 20 sacks Spaulding Rose @ $3.45.. 69 00 | | |
| 70 sacks Sunlight @ $2.90........ 203 00 | $649 00 | |
| Freight 36,300 lbs. Bristol to Beaufort @ 29c.. | 75 87 | |
| | | |
| Less freight Savannah @ 10c sack........... | $ 22 00 | |
| | | |
| | $702 87 | |

These goods are shipped to order."

The testimony was conflicting. The jury found for the plaintiff, and from the judgment entered upon their verdict the defendant appealed.

The following are the exceptions:

"There was no testimony tending to show that the defendant was responsible for the quality of the seed furnished the plaintiff or for its productiveness or for the crop, and the evidence showed that the defendant had expressly disclaimed any such responsibility."

1-3

The weak place in appellant's case is that very disclaimer of responsibility for the quality of goods furnished. The attack was on the quality. The general rule is, undoubtedly, that a sound price warrants a sound article. The effort to combine the order with the statement on the invoice and bill of lading as a matter of law must fail under *Marlboro Wholesale Grocery Co.* v. *Brooke,* 70 S. C. 496, 50 S. E. 186. In that case inspection was allowed before the payment of the draft and the permission was written on the bill of lading and yet this Court held that the purchaser

was not bound to exercise the permission. Here there was no such endorsement and the agent of the transportation company said, while he did not feel bound to allow goods to be opened by every one, he would probably have allowed the plaintiff to open and inspect, as he was a responsible man.

When the plaintiff first saw the potatoes (and we have seen that he was not bound to inspect) he had already paid the draft, taken the bill of lading and was then the owner of the goods. It is claimed by appellant that it was the duty of the respondent to notify the appellant of the defect at once. Whether the buyer is held to the disclaimer or not, the seller cannot escape the consequences of its own statements. That statement notified the appellant that the seller did not hold itself liable for defect in quality and no goods would be taken back. The appellant claims that it notified the respondent, time and again, that it denied liability for "quality" and it is in Court now strenuously maintaining the same thing.

The demand for reparation was refused in advance as a matter of right, and a party is not bound to ask a favor. The appellant claims he should have been given the opportunity to do that which he declared he would not do—"No goods taken back." If the appellant had shipped the potatoes to the respondent and he had received and paid for them, after he knew of the alleged defects, and nothing more appeared, a very different sort of a question would have been presented.

This exception cannot be sustained.

"Because the testimony offered on behalf of the plaintiff showed that the plaintiff had voluntarily accepted the seed potatoes, after examination, and had himself taken the risks of producing a crop therefrom."

We have seen that there was evidence to show that the respondent did not inspect, nor was the *right* to inspect accorded to him until after he had purchased them.

This exception cannot be sustained.

"There was no testimony before the jury to sustain the plaintiff's cause of action."

We have seen that there was such testimony and this exception is overruled.

"Because the presiding Judge erred in refusing to charge the defendant's first request to charge, which was as follows:

" 'The jury are instructed that if they find from the evidence that the potatoes were in good condition, fit for the use for which purchased, when the same were shipped at the point of shipment, and that the same were purchased f. o. b. with draft against them, then as a matter of law, the title to the shipment passed to the purchaser, the plaintiff, when put on board for carriage to the point of destination, and the defendant would not be liable for any damages to the potatoes occurring during such shipment or after arrival at destination.'

"The error assigned being there was no admission in the answer which made it improper to charge this proposition, and the evidence showed that the shipment of these goods, which was accepted and agreed to by him, before or at the time of receiving these goods was f. o. b. point of shipment."

His Honor could not have charged that request, because the undisputed evidence is that, according to the law of this State, the defendant retained title and possession in itself until the goods arrived in Beaufort, S. C., and the draft was paid and the bill of lading turned over to the respondent.

This exception is overruled.

"Because the presiding Judge erred in leaving it to the jury to say in charging the defendant's fourth and fifth requests to charge and in his general charge that there was any contract between the parties that there should be no warranty of the seed furnished by the plaintiff to defendant.

The error assigned being that such contract was shown by undisputed evidence in the case, and the defendant was, therefore, entitled to have its request to charge, without the modification made by the presiding Judge."

Under the case of *Marlboro Wholesale Grocery Co.* v. *Brooke,* 70 S. C. 496, 50 S. E. 186, Judge Bowman could not have made the charge.

This exception is overruled.

In its argument in reply, the appellant raises the question of measure of damages. The measure of damages was not in issue on Circuit nor by exception to this Court.

The judgment appealed from is affirmed.