Cole L. SMITH, Appellee,

v.

**REGINA MANUFACTURING CORPO-RATION, and Sears Roebuck and Company, Appellants.**

**No. 11976.**

United States Court of Appeals
Fourth Circuit.

Argued April 4, 1968.

Decided June 14, 1968.

---

David W. Robinson, Columbia, S. C., (William Elliott, Columbia, S. C., on brief) for appellants.

J. Clator Arrants, Camden, S. C., for appellee.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge:

Sears, Roebuck & Company and Regina Manufacturing Corporation, defendants in this products liability action brought under the diversity jurisdiction, appeal from a judgment for $85,000 entered upon a verdict of negligence. They raise certain common defenses, and other separate ones. Each challenges the sufficiency of the evidence to support the jury finding that it was negligent and argues that appellee's injuries resulted from his own negligence. The defendants further contend that, assuming arguendo that they are liable, the award was excessive. Separately, Sears denies liability for a product it neither designed nor manufactured, and Regina, the manufacturer, a Delaware corporation with headquarters in New Jersey, insists that it is not subject to process in South Carolina, where the injury occurred and this action was brought. Finding appellants' contentions devoid of merit, we affirm the judgment of the District Court.

Briefly stated, the facts are that plaintiff Cole L. Smith, a citizen of South Carolina, purchased from Sears' catalog store in Camden, S. C., an electric floor polisher-scrubber manufactured by Regina by sold under the Sears' tradename "Kenmore." After taking the polisher home and assembling it in his kitchen, Smith filled a special dispenser attached to the unit with a scrubbing solution, poured water on the floor and plugged the appliance into the nearest socket. Upon flipping the switch, Smith received a violent electric shock which threw him across the room and against a stove, causing a severe back injury.

Appellants insist that even if the manufacturer's stringent safety standards failed to disclose any defects before the machine left the plant, the proximate cause of the accident was Smith's contributory negligence in turning the polisher on while it was standing on a wet floor. The jury found that the polisher was defective at the time Smith threw the switch, and that the accident would not have occurred but for this defect. The trial transcript clearly supports this finding. Moreover, the manufacturer's instructions gave no warning against using the polisher on a wet floor.

Since it is not the manufacturer of the defective polisher, Sears further contends that under South Carolina law, which clearly governs this action, it may not be held liable for plaintiff's injuries. We disagree.

In Carney v. Sears Roebuck & Co., 309 F.2d 300 (4 Cir. 1962), this court, relying heavily on Judge Soper's opinion in Swift & Co. v. Blackwell, 84 F.2d 130 (4 Cir. 1936), recognized the doctrine that a retailer (in that case also Sears) who sold as its own a product manufactured by a third party could be held responsible for injuries resulting from defects arising in the course of manufacture, and we concluded that Virginia had adopted this rule. See Restatement of the Law of Torts, Vol. 2, § 400, comment c. While it is true that the state of South Carolina had not at the time of this trial adopted the rule *per se*, the pronouncements on products liability emanating from the highest court of that state clearly demonstrate a desire to protect consumers and corre-

spondingly to impose stringent duties on sellers. Revealingly, the state has never recognized the rule of caveat emptor and has held non-warranty clauses inapplicable unless clearly brought to the buyer's attention. Stevenson v. B. B. Kirkland Seed Co., 176 S.C. 345, 180 S.E. 197, 201–202 (1935); Sanders v. D. Landreth Seed Co., 100 S.C. 389, 84 S.E. 880 (1915). For over 130 years, South Carolina has held to the principle that a retailer, "whether he was ignorant of the defect or conscious of it, is bound to take back the thing or to abate the price, *and to make good the damages which the buyers shall have suffered.*" Stevenson v. B. B. Kirkland Seed Co., supra, 180 S.E. at 201. For a recent example of the liberal posture generally assumed by the state's Supreme Court in products liability cases see Springfield v. Williams Plumbing Supply Co., et al., 249 S.C. 130, 153 S.E.2d 184 (1967). Moreover, in 1966 the South Carolina legislature adopted its version of the Uniform Commercial Code which provides:

"(1) Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

S.C.Code § 10.2–314 (Supp.1966). Although the statute did not become effective until after the transaction in the instant case, its presence in the South Carolina Code at the time of this trial, with no authority to the contrary, further evidences the state's receptivity to the doctrine enunciated in *Carney,* supra. Applying South Carolina law, as we think the Supreme Court of that state would declare it, we hold that by selling the product under its trade name, Sears warranted its merchantability and assumed the responsibilities of a manufacturer.

■■ Regina's jurisdictional point is that it is a foreign corporation that transacts no business in South Carolina. On this basis it insists that it is not amenable to process in that state. The answer to this contention must be sought in South Carolina's service of process statutes, S.C.Code Ann. §§ 10–424 & 12–23.14 (Supp.1965), and its highest court's interpretations of those statutes. Although there is no "long-arm" statute specifically providing for jurisdiction over manufacturers who sell their products through local independent retailers, the South Carolina Supreme Court has adopted a very broad "contacts" theory of jurisdiction. In its most recent decision, the court required only "that the corporation have such contact with the state of the forum that the maintenance there of an action against it *in personam* shall not 'offend traditional notions of fair play and substantial justice.'" Carolina Boat & Plastics Co. v. Glascoat Distributors, Inc., 249 S.C. 49, 152 S.E.2d 352 (1967); Boney v. Trans-State Dredging Co., 237 S.C. 54, 115 S.E.2d 508 (1960). By soliciting business in the state, entering into arrangements with numerous local distributors to handle its products and providing in-state agents to repair defective appliances under its warranty, Regina has established sufficient contacts to permit the state of South Carolina to provide its citizens with an effective means of redress against this foreign corporation. Such contacts support the exercise of *in personam* jurisdiction and due process is in no way violated. See International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The District Court did not err in refusing to dismiss the action for lack of jurisdiction.

■ Nor can we say that the District Judge abused his discretion in refusing to reduce the damages awarded by the jury. It is uncontested that Smith, only 31 years old at the time of the accident, sustained a severe injury necessitating two major operations, and that he was still suffering substantial pain, at the time of the trial, almost three years after the accident. The medical testimony

placed his disability at between 30 and 100 per cent with no prospect of future improvement. Although reinstated by his employer, Smith was forced to take a cut in pay and it was clearly understood that he would not qualify for any further advancement. Under these circumstances, the award does not appear excessive. See Rachesky v. Firklea, 329 F.2d 606, 610 (4 Cir. 1964); Virginia Railway Company v. Rose, 267 F.2d 312 (4 Cir. 1959).

For the reasons stated, the judgment of the District Court is

Affirmed.